THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9
BRUCE BYLES,                                    CASE NO. C16-0834-JCC

10
                                                ORDER GRANTING MOTION FOR
                    Plaintiff,                  JUDGMENT ON THE PLEADINGS
11
        v.

12

13
ACE PARKING MANAGEMENT, INC.,

14
                    Defendant.

15      This matter comes before the Court on Defendant Ace Parking's motion for judgment on

16  the pleadings (Dkt. No. 14). Having thoroughly considered the parties' briefing and the relevant

17  record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the

18  reasons explained herein.

19  **I.      BACKGROUND**

20      In April 2016, Plaintiff Bruce Byles parked at an Ace Parking facility in Seattle,

21  Washington. (Dkt. No. 1 at 5.) Before exiting the garage, Byles paid for his parking spot with his

22  personal debit card. (*Id.*) Byles received an electronically printed receipt with his debit card

23  number truncated; however the receipt displayed the card's expiration date. (*Id.*) In June 2016,

24  Byles filed suit, alleging that Ace violated the Fair and Accurate Credit Transactions Act

25  ("FACTA"), specifically 15 U.S.C. § 1681c(g)(1), which states:

26      Except as otherwise provided in this subsection, no person that

1    accepts credit cards or debit cards for the transaction of business
     shall print more than the last 5 digits of the card number or the
2    expiration date upon any receipt provided to the cardholder at the
     point of the sale or transaction.
3

4        Byles does not allege that he suffered actual damages from Ace's printing of the

5    expiration date on his receipt, but rather that Ace's failure to redact the expiration date of his

6    debit card alone exposed him to risk of identity theft. (Dkt. No. 1 at 27.) He seeks statutory and

7    punitive damages, attorney fees, and costs under 15 U.S.C. § 1681n(a), which establishes civil

8    liability for willful noncompliance. (*Id.* at 4, 6.) Ace now brings this Federal Rule of Civil

9    Procedure 12(c) motion for judgment on the pleadings, and asks this Court to dismiss Byles'

10   claims because (1) Byles has not alleged a concrete injury sufficient to confer Article III standing

11   under the standard set forth by *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); and (2)

12   Byles has not alleged facts sufficient to state a claim for a negligent or willful FACTA violation.

13   (Dkt. No. 14 at 1–2.)

14   **II.    DISCUSSION**

15       **A.    Legal Standard**

16       A motion for judgment on the pleadings may be brought "after the pleadings are closed—

17   but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion challenges the

18   sufficiency of the opposing party's pleadings and operates in much the same manner as a motion

19   to dismiss under 12(b)(6)."[1] *Morgan v. Yolo*, 436 F.Supp.2d 1152, 1154–55 (E.D. Cal. 2006).

20   "Judgment on the pleadings is proper when the moving party clearly establishes on the face of

21

22   _____

        [1] Byles argues that the Federal Rule of Civil Procedure 12(b)(6) standard is inappropriate here when the
23   motion to dismiss is premised on a lack of standing and should instead be evaluated under 12(b)(1). (Dkt. No. 20 at
     8–9 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).) However, under 12(b)(1) a defendant may
24   challenge a plaintiff's jurisdictional allegations through a facial attack, which accepts the truth of the allegations yet
     maintains they are "insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121
25   (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court
     resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as
26   true and drawing all reasonable inferences in the plaintiff's favor," and then determining whether they are legally
     sufficient to invoke jurisdiction. *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). In this instance,
     the 12(b)(1) and 12(b)(6) standards operate in the same manner.

1   the pleadings that no material issue of fact remains to be resolved and that it is entitled to

2   judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

3   1550 (9th Cir. 1989). The court construes all material allegations in the light most favorable to

4   the non-moving party. *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir.

5   2006). Thus, a "Motion for Judgment on the Pleadings may consequently be granted if, after

6   assessing both the complaint, plus matters for which judicial notice is proper, it appears 'beyond

7   doubt that the [non-moving party] cannot prove any facts that would support his claim for

8   relief.'" *Morgan*, 436 F.Supp.2d at 1155 (quoting *R.J. Corman Derailment Services, LLC v. Int'l*

9   *Union of Operating Engineers, Local 150, AFL–CIO*, 335 F.3d 643, 647 (7th Cir. 2003)).

10          The Court takes as true Byles' allegations that the receipt printed for him displayed the

11   expiration date of his debit card and that Ace received notice of FACTA's requirements from

12   various sources and still failed to delete the expiration date from its receipts.

13   **B.      Article III Standing**

14          Ace first argues that Byles has not suffered an injury in fact sufficient to convey standing

15   under Article III. (Dkt. No. 14 at 6–8.) Standing consists of three elements: the plaintiff must (1)

16   have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

17   defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v.*

18   *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Once a party asserts the absence of subject

19   matter jurisdiction, the opposing party invoking the court's jurisdiction bears the burden of

20   proving it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

21          At issue here is whether Byles suffered sufficient injury in fact—the "[f]irst and

22   foremost" of standing's three elements—to establish standing. *Steel Co. v. Citizens for Better*

23   *Environment*, 523 U.S. 83, 103 (1998). Injury in fact is a constitutional requirement and

24   Congress may not bypass it "by statutorily granting the right to sue to a plaintiff who would not

25   otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To establish injury in fact,

26   a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is

1  'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,*

2  *Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). Ace challenges

3  standing on the grounds that Byles' injury is not "concrete." (Dkt. No. 14 at 8.)

4        The Supreme Court recently clarified what constitutes a concrete injury sufficient to

5  satisfy the injury in fact requirement of standing in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540

6  (2016). Specifically, the Court looked at the concreteness requirement as applied to an intangible

7  injury. *Spokeo*, 136 S.Ct. at 1549. The plaintiff in *Spokeo* alleged a procedural violation of the

8  Fair Credit Reporting Act ("FCRA") when the defendant published inaccurate information about

9  the plaintiff on its website. *Id.* at 1544 (citing 15 U.S.C. § 1681e(b)). The trial court dismissed

10  for lack of standing, but the Ninth Circuit reversed, holding that the plaintiff's harm was

11  sufficiently "particularized." *Id.* The Supreme Court remanded to the Ninth Circuit because it

12  failed to examine whether plaintiff's injury was concrete in addition to being particularized. *Id.*

13  at 1545.

14        The Court went on to discuss concreteness, stating that a concrete injury must actually

15  exist; it must be real and not abstract. *Id.* at 1548. Concrete injuries, however, need not

16  necessarily be tangible, *id.* at 1549, and "Congress may 'elevat[e] to the status of legally

17  cognizable injuries concrete *de facto* injuries that were previously inadequate in law.'" *Id.*

18  (quoting *Lujan*, 540 U.S. at 578). That being said,

> Congress' role in identifying and elevating intangible harms does
> not mean that a plaintiff automatically satisfies the injury-in-fact
> requirement whenever a statute grants a person a statutory right
> and purports to authorize that person to sue to vindicate that right.
> Article III standing requires a concrete injury even in the context
> of a statutory violation.

23  *Id.*

24        There appears to be some tension between the idea that Congress may elevate a

25  previously inadequate injury to that of a legally cognizable one, and the fact that a plaintiff might

26  not satisfy the injury in fact requirement stemming from a statutory violation which results in

ORDER GRANTING MOTION FOR JUDGMENT
ON THE PLEADINGS
PAGE - 4

only an intangible harm. To guide lower courts in such a situation, the Supreme Court directed that in determining whether an intangible injury constitutes a concrete harm, courts should consider (1) whether the alleged harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and (2) the extent to which Congress has defined an injury by statute. *Id.* Relevant to this inquiry is the risk of real harm to the plaintiff. *Id.* Turning to the alleged facts of this case, which directly parallel issues discussed in *Spokeo*, Byles has not demonstrated a concrete harm sufficient to satisfy the injury in fact requirement.

1. <u>Relationship to Traditionally Recognized Harms</u>

Byles argues that the common law has long recognized privacy torts and printing the expiration date of his debit card constitutes an analogous harm. Byles likens the printing of the expiration date to the torts of invasion of privacy, intrusion on seclusion, and disclosure of private facts, as well as to trespass to chattels. (Dkt. No. 20 at 17–21.) The Court finds Byles' arguments unpersuasive.

The only common ground between Byles' alleged harm and that of invasion of privacy is that they are both intangible harms for which damages may be difficult to quantify. For invasion of privacy torts such as defamation or slander per se, damages are presumed because it is difficult, if not impossible, to affix damages "for present and future injury to the plaintiff's reputation, wounded feelings and humiliation, loss of business, and any consequential physical illness or pain." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 373 n. 4 (1973) (White, J., dissenting). Here, the Court cannot say that printing the expiration date of a customer's debit card, while truncating the actual card number, could reasonably lead to humiliation, loss of reputation, pain, or the like. The same can be said in regard to intrusion on seclusion and disclosure of private facts.

Intrusion on seclusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Restatement

ORDER GRANTING MOTION FOR JUDGMENT
ON THE PLEADINGS
PAGE - 5

(Second) of Torts § 652B (1977). Disclosure of private facts entails publishing private facts such as "sexual relations, . . . family quarrels, many unpleasant or disgraceful or humiliating illnesses, [or] most intimate personal letters." *Id.*, cmt. b. These torts involve an actual invasion into an individual's privacy and exist to protect interests so intertwined with the intimate details of private life that harm—even if it is intangible—is readily apparent. This Court will not elevate or analogize publication of the expiration date of one's debit card to such a high, damaging level of intrusion.

Finally, Byles argues that his injury is analogous to trespass to chattels because he has a property interest in his debit card information. (Dkt. No. 20 at 20.) Assuming this is true, and even though the creation of a risk of property damage may constitute a concrete injury, *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 146 (2010), the risk associated with printing only the expiration date—that someone might "trespass upon" such information—is de minimus. (Dkt. No. 20 at 20.) Addressing a related issue, one court recognized the high improbability of having one's credit card misused through printing of the expiration date alone:

> At oral argument, Plaintiff's counsel argued that harm could result if a criminal acquired a discarded receipt with an expiration date and name, found out where the cardholder lived, sabotaged that cardholder's trash and found a discarded credit card statement with the cardholder's number. With these three pieces of information, Plaintiff's counsel posited, the criminal could make charges to the account. While this scenario is technically possible, it does not generate the "high risk of harm" contemplated by the standard.

*Vidoni v. Acadia Corp.*, 2012 WL 1565128, at *5 (D. Maine, April 27, 2012).

Byles fails to demonstrate that any alleged harm or risk of harm stemming from the publication of his debit card's expiration date relates to harms traditionally recognized at common law.

2. <u>Congress' Role in Identifying Intangible Harms</u>

Byles does not allege an actual or tangible harm, but rather that the publication of his debit card's expiration date injured him "by exposing his payment card information and

credit/debit account to a risk of identity theft and fraudulent misuse." (Dkt. No. 1 at 27.) Byles'

conclusion that Ace exposed him to a real risk of identity theft and fraud need not be accepted

outright,[2] and must coalesce with the judgment of Congress. Congress' purpose in enacting

FACTA was "to prevent criminals from obtaining access to consumers' private financial and

credit information in order to reduce identity theft and credit card fraud." Credit and Debit Card

Receipt Clarification Act of 2007, Pub. L. No. 110-241 (2008) ("Clarification Act"), § 2(a)(1).

However, Congress also found that "[e]xperts in the field agree that proper truncation of the card

number, by itself as required by the amendment made by [FACTA], regardless of the inclusion

of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card

fraud. *Id.*, § 2(a)(6). Congress explicitly found that printing the expiration date of a debit or

credit card on a receipt, if the credit card number is properly truncated, does not, on its own pose

a risk of the harms it enacted FACTA to prevent.

Byles argues that because Congress' findings were used to support a safe harbor

provision for merchants who truncated credit card numbers but not expiration dates, which

expired in 2008, the Court should ignore Congress' findings and rule that FACTA alone grants

Byles standing. (Dkt. No. 20 at 14–15.) This may well have been true pre-*Spokeo*, but following

*Spokeo*, the fact that Congress found the exact actions alleged here to pose no risk of identity

theft or fraudulent misuse is significant. Further, Byles argues that Congress has had multiple

opportunities to amend 15 U.S.C. § 1681c(g)(1) to remove the expiration date requirement but

has not, which indicates that "Congress' intent was to reduce opportunities for identity theft" by

requiring truncation of the number and redaction of the expiration date. (Dkt. No. 20 at 15–16.)

However, that Congress would intend this, while at the same time not elevating the failure to

redact an expiration date to a concrete harm sufficient for injury in fact, are not mutually

---

[2] Taking Byles' allegations as true, a reasonable inference is that credit card fraud resulting from printing only the expiration date is technically possible. However, as the court in *Vidoni* pointed out, fraud from only printing the expiration date is so highly unlikely that Byles' conclusion that he was put at a legitimate risk of identity theft and credit card fraud stretches the inference into the realm of the unreasonable.

ORDER GRANTING MOTION FOR JUDGMENT
ON THE PLEADINGS
PAGE - 7

1   exclusive notions. Congress may err on the side of caution in a statutory provision without

2   creating a substantive right to sue.

3           Byles points to several cases for the proposition that printing the expiration date on a

4   receipt violates a substantive right created by FACTA. (Dkt. No. 20 at 17 (citing *Wood v. J Choo*

5   *USA, Inc.*, 2016 WL 4249953 (S.D. Fla. Aug. 11, 2016); *Guarisma v. Microsoft Corp.*, WL

6   4017196 (S.D. Fla. July 26, 2016); *Altman v. White House Black Market, Inc.*, 2016 WL

7   3946780 (N.D. Ga. July 13, 2016); *Amason v. Kangaroo Exp.*, 2013 WL 987935 (N.D. Ala. Mar.

8   11, 2013)).) However, *Amason* was pre-*Spokeo* and the defendant did not truncate the credit card

9   numbers. 2013 WL 987935, at *1. *Altman* also dealt with the failure to properly truncate the

10  actual card number. 2016 WL 3946780, at *1. In *Guarisma*, the defendant printed ten digits of

11  the credit card number along with the plaintiff's name. 2016 WL 4017196, at *3. This Court

12  expresses no opinion on whether failure to truncate the credit card number would be sufficient to

13  convey standing under the guidelines set forth in *Spokeo*. However, the risk of identity theft and

14  fraudulent misuse of one's credit cards from the harms alleged in *Amason*, *Altman*, and

15  *Guarisma* is different in both degree and kind from that of failure to redact an expiration date.

16          Only in *Wood* are the facts similar. There, the defendant truncated the credit card number,

17  but printed the expiration date, and, relying on *Guarisma*, the court concluded that this

18  constituted injury in fact. 2016 WL 4249953, at *6. In *Wood*, however, the plaintiff also alleged

19  that the receipt contained the plaintiff's name, address, phone number, and last four digits of the

20  credit card number. Byles makes no such allegations here. Furthermore, the decision of that court

21  is not binding, and this Court respectfully disagrees with its conclusion.

22          The facts alleged, taken as true and with all reasonable inferences drawn in favor of

23  Byles, are insufficient to demonstrate a risk of harm pursuant to the guidelines set forth in

24  *Spokeo*. Byles has not established a concrete harm and therefore does not have standing to bring

25  suit. Because this Court finds Byles lacks standing, it will not address Ace's second argument,

26  that Byles has not alleged facts sufficient to state a claim for a negligent or willful FACTA

1   violation.

2   **III.     CONCLUSION**

3          For the foregoing reasons, Defendant Ace Parking's motion for judgment on the

4   pleadings (Dkt. No. 14) is GRANTED. The Court ORDERS that Plaintiff Byles' claims are

5   dismissed without prejudice.

6

7          DATED this 4th day of October 2016.

8

9

10

11

12

13

14                                          _____

15                                          John C. Coughenour
                                            UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION FOR JUDGMENT
ON THE PLEADINGS
PAGE - 9